UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST COAST REGIONAL CENTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> UR JADDOU, <br><br> Defendant. | Case No. 23-cv-06336-PCP <br><br> **ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 11, 19 |

This action involves the treatment of "regional centers" designated under the Immigration and Nationality Act's EB–5 immigrant investor visa program. Plaintiff West Coast Regional Center ("West Coast"), a Florida-based corporation and regional center first designated in 2015, brings this action against Ur Jaddou in her official capacity as Director of U.S. Citizenship and Immigration Services ("USCIS"). The Maryland-based agency administers the EB–5 visa program through its Immigrant Investor Program Office ("IPO") located in the District of Columbia. West Coast challenges USCIS's treatment of previously authorized regional centers following the enactment of the EB–5 Reform and Integrity Act of 2022 ("RIA"). USCIS has interpreted the RIA as requiring previously authorized regional centers like West Coast to reapply for designation to come into compliance with the RIA. West Coast contends that it was not required to reapply and is suffering continuing harm due from having done so.

Before the Court is West Coast's motion for summary judgment and Jaddou's Rule 12(b)(3) and Rule 12(b)(6) cross-motions to dismiss or in the alternative for summary judgment. For the following reasons, the Court grants Jaddou's Rule 12(b)(3) motion and denies without prejudice the remaining motions.

# BACKGROUND

## I. Statutory Background

As part of the Immigration Act of 1990, Congress established the EB–5 visa program, which provides a pathway to lawful permanent resident status for foreign nationals who invest a certain amount of money in a new commercial enterprise (NCE) that creates at least 10-full time jobs in the United States. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 121(a), 104 Stat. 4978 (1989).

USCIS administers the EB–5 visa program. *See* 8 C.F.R. § 204.6. In a 1992 appropriations bill, Congress expanded the EB–5 visa program by piloting the Regional Center Program, which created government-designated "regional centers" to promote the pooling of investments from noncitizen investors. Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102–395, § 610, 106 Stat 1828, 1828 (1992). The "regional centers" were designed to help fund larger projects and therefore create more jobs. *See id.*

In March 2022, Congress reformed the EB–5 program by passing the RIA, which adds new requirements that regional centers must meet to receive authorization. *See* Pub. L. No. 117–103, div. BB, 136 Stat. 1070 (Mar. 15, 2022). USCIS initially interpreted the new law to mean that regional centers previously designated under section 610(a) of the 1992 appropriations bill (like West Coast) were no longer authorized. *See* Compl. ¶¶ 29–30. Following a preliminary injunction enjoining the agency "from treating as deauthorized the previously approved regional centers," *Behring Reg'l Ctr. LLC v. Mayorkas*, No. 22-cv-2487, 2022 WL 2290594, at *3 (N.D. Cal. June 24, 2022), and a settlement agreement approved by this Court, *see* Settlement Agreement, *EB5 Capital v. U.S. Dep't. Homeland Sec.*, No. 3:22-cv-03948 (N.D. Cal. Aug. 24, 2022), Dkt. Nos. 47 & 48, USCIS agreed to allow regional centers authorized prior to the RIA to continue participating in the EB–5 visa program.

USCIS released its Form I-956, Application for Regional Center Designation, in May 2022, and required all regional centers to request designation and demonstrate compliance with the RIA by December 2022 or risk termination. Compl. ¶¶ 31, 42; *see* Dkt. No. 11-1, at 5. This

1 required regional centers to demonstrate, among other things, that (1) "there are policies and procedures in place by the Regional Center 'reasonably designed' to ensure compliance by the Regional Center, issuer, and any agent or party associated with the offering, with: (a) the securities laws of the United States and (b) state securities laws;" (2) "a certification that those parties … are in compliance," and (3) "that there is at least one (1) direct job out of ten (10) required created." Compl. ¶¶ 28, 44; *see* Dkt. No. 11-1, at 80–88. Although the agency ultimately abandoned its position that centers like West Coast had been automatically deauthorized through enactment of the RIA, USCIS concluded that the centers were still required to reapply for designation in conformity with the RIA in order to maintain their authorization. *See* Settlement Agreement, *EB5 Capital v. U.S. Dep't. Homeland Sec.*, No. 3:22-cv-03948 (N.D. Cal. Aug. 24, 2022), Dkt. No. 47-2.

**II.     Facts**

USCIS is a federal agency under the Department of Homeland Security with headquarters in Maryland.[1] USCIS is responsible for administering the EB–5 visa program through its Washington-D.C.-based IPO. *See* 8 C.F.R. § 204.6; Dkt. No. 11-1, at 5–10; Dkt. No. 19. West Coast is a corporation headquartered in Florida. *See* Dkt. No. 11-1, at 5.

USCIS initially designated West Coast as a regional center on April 17, 2015. Compl. ¶¶ 35–36; Dkt. No. 11-1, at 1. USCIS approved West Coast for EB–5 projects in California and Nevada in the industries of "Construction of Buildings," "Merchant Wholesalers, Durable Goods," "Lessors of Real Estate," "Architectural, Engineering, and Related Services," "Traveler Accommodation," "Food Services and Drinking Places," and "Other Personal Services." Compl. ¶ 35; Dkt. No. 11-1, at 1–2. Prior to the enactment of the RIA, West Coast entered into a business relationship with SJCR Investors, LLC, an active limited liability company operating in San Jose, California, and authorized SJCR Investors to raise $10,500,000 from approximately 21 EB–5

---

[1] During oral argument, USCIS conceded that its headquarters are in Maryland. *See also Froneman v. Jaddou*, No. CV DKC 23-2979, 2024 WL 229560, at *1 (D. Md. Jan. 22, 2024) ("The U.S. Citizenship and Immigration Services ('USCIS') headquarters is in Maryland."); *Anukwu v. Jaddou*, No. CV DKC 23-713, 2023 WL 3979310, at *1 (D. Md. June 13, 2023) ("Defendants state that the United States Citizen and Immigration Services ('USCIS') relocated from the District of Columbia to Maryland in December 2020.").

1  investors for the construction of a commercial building in San Jose. Compl. ¶¶ 1, 37–38.

2  After USCIS announced that regional centers that were authorized to participate in the EB–
3  5 program before enactment of the RIA would have to reapply for designation or risk termination,
4  West Coast filed a Form I-956 amendment application with USCIS, accompanied by the required
5  filing fee, that demonstrated its compliance with the additional requirements of the RIA. The IPO
6  approved West Coast's Form I-956 in November 2023. Compl. ¶ 45; Dkt. No. 11-1, at 5–8.

7  Even though its reapplication was approved, West Coast filed this action against Jaddou on
8  December 8, 2023, alleging that USCIS's requirement that previously-designated centers reapply
9  and demonstrate compliance with the new provisions of the RIA (referred to by West Coast as the
10  "Double Designation Rule") is unlawful under the Administrative Procedure Act and causes
11  ongoing harm to West Coast. 5 U.S.C. § 706(2). Specifically, West Coast alleges that the Double
12  Designation Rule is *ultra vires* and an arbitrary and capricious legislative rule promulgated
13  without notice and comment. Compl. ¶¶ 48–56. West Coast requests a declaration that the Double
14  Designation Rule is unlawful and an injunction enjoining the rule and setting aside West Coast's
15  Form I-956 approval. *Id.* ¶¶ 57–59.

16  West Coast now moves for summary judgment. Dkt. No. 11. Jaddou cross-moves to
17  dismiss the complaint both under Rule 12(b)(6) and Rule 12(b)(3). Dkt. No. 19. In the alternative,
18  Jaddou cross-moves for summary judgment. *Id.*

19  **LEGAL STANDARD**

20  Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss an action for
21  improper venue. On such a motion, the plaintiff bears the burden of proving that venue is proper.
22  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The
23  "pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe*
24  *1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

25  28 U.S.C. § 1406(a) provides that the "district court of a district in which is filed a case
26  laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,
27  transfer such case to any district or division in which it could have been brought."

28

4

**ANALYSIS**

In a suit against the federal government and federal officials, venue is determined according to 28 U.S.C. § 1391(e). That section provides that a suit against the federal government or a federal official acting in their official capacity can be brought in any judicial district where: (1) "a defendant in the action resides;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) "the plaintiff resides if no real property is involved in the action." West Coast has failed to establish that venue in this District is proper under any of these prongs.

First, Jaddou does not reside in the Northern District of California. A federal officer's residence is determined by the location where she performs her official duties. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Trout v. Cnty. of Madera*, No. 21-CV-06061-PJH, 2022 WL 2479156, at *7 (N.D. Cal. July 6, 2022), *aff'd*, No. 22-16177, 2023 WL 8592880 (9th Cir. Dec. 12, 2023). USCIS's headquarters are in Maryland, so Maryland is Jaddou's residence for the purposes of Section 1391(e)(1).

Second, the events or omissions that gave rise to West Coast's claim did not occur in the Northern District of California. Generally, for venue to be proper, "significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Xcentric Ventures LLC v. Borodkin*, No. CV-11-1426-PHX-GMS, 2012 WL 692976, at *7 (D. Ariz. Mar. 1, 2012) (quoiting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). "[O]nly the events that directly give rise to a claim are relevant." *Lawler v. Tarallo*, No. 13-cv-3284, 2013 WL 5755685, at *3 (N.D. Cal. Oct. 23, 2013) (citations omitted). In this case, the allegedly unlawful implementation of the RIA and administration of the EB–5 visa program that gave rise to West Coast's claim occurred primarily either in Maryland, where USCIS is located, or in the District of Columbia, where the IPO is located. West Coast contends that the events giving rise to its claim occurred in this District because it has an investment project here, but that project is not a significant event or omission giving rise to its

claim, which focuses entirely on USCIS's administration of the EB–5 program and processing of West Coast's Form I-956. While USCIS's implementation of the RIA might have economic effects in this forum, any second-level economic or social impact of its partner's investments in this District is too tenuous to justify West Coast's choice of venue. *See Sadasivan v. Emmel*, No. 23-cv-19, 2023 WL 4187445, at *7-8 (E.D. Cal. June 26, 2023); *Batra v. USCIS*, No. 21-cv-2489, 2021 WL 4353112, at *3 (C.D. Cal. Aug. 2, 2021).

Third, West Coast is a corporation residing in Florida and thus does not reside in this District.

West Coast therefore cannot establish any of the three potential bases for filing suit in this District. West Coast nonetheless argues that USCIS waived its right to challenge venue by opposing a motion to relate this case to the *Behring Regional Center* case, filing an opposition to a motion for an extension of time, and filing an appearance in this case—all prior to raising any objection to venue.[2] That argument lacks merit. Rule 12(h)(1) specifies the circumstances under which a defendant waives her objection to venue and provides that waiver does not occur if that defense is asserted in the defendant's initial motion to dismiss. In compliance with that rule, Jaddou properly raised the issue of venue in its cross-motion to dismiss, which constituted her initial Rule 12 response to the complaint. Jaddou therefore timely challenged venue in this Court.[3]

Having found that venue in this District is improper, the Court has discretion to either dismiss the case or transfer it to a district in which it could have been brought. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992). Commonly, the interests of justice favor transfer under 28 U.S.C. § 1406(a). Here, however, the parties dispute the proper venue for such a transfer. Because no unfair prejudice, such as a statute-of-limitation bar, would result from the Court dismissing the

---

[2] Unlike a challenge to this Court's subject-matter jurisdiction, a defendant's objection to the plaintiff's choice of venue is waivable. *See* Fed. R. Civ. P. 12 (h)(1).

[3] Even assuming that a party could waive a venue objection through litigation conduct notwithstanding their compliance with Rule 12(h)(1), as West Coast seemingly contends, the extremely limited procedural matters involved in Jaddou's pre-Rule 12 filings would not be sufficient to justify a finding of waiver. The Court therefore need not determine whether Rule 12(h)(1) provides the exclusive measure for determining whether a defendant's venue objection has been waived.

action rather than transferring it, the Court will exercise its discretion to dismiss the case rather than resolving the parties' dispute.

## CONCLUSION

For the foregoing reasons, Jaddou's Rule 12(b)(3) motion is granted and West Coast's lawsuit is dismissed without prejudice. Jaddou's Rule 12(b)(6) motion and summary judgment motion and West Coast's motion for summary judgment are denied without prejudice.

**IT IS SO ORDERED.**

Dated: July 19, 2024

P. Casey Pitts
United States District Judge